365 So.2d 1044 (1978)
The SCHOOL BOARD OF PALM BEACH COUNTY, INC., Appellant,
v.
Cynthia TAYLOR, by and through Her Father and Next Friend, George Taylor, and George Taylor, Individually, Appellees.
The SCHOOL BOARD OF PALM BEACH COUNTY, INC., Appellant,
v.
Kathea CLARKE, By and through Her Mother and Next Friend, Kathryn Clarke, and Kathryn Clarke, Individually, Appellees.
The SCHOOL BOARD OF PALM BEACH COUNTY, INC., Appellant,
v.
Patricia O'HARA, by and through Her Mother and Next Friend, Patricia Servis, and Patricia Servis, Individually, Appellees.
Nos. 77-384 to 77-386.
District Court of Appeal of Florida, Fourth District.
December 27, 1978.
*1045 Michael B. Davis of Walton, Lantaff, Schroeder & Carson, West Palm Beach, for appellant.
Thomas A. Hoadley of Law Offices of Thomas A. Hoadley, P.A., West Palm Beach, for appellees.
ANSTEAD, Judge.
These are consolidated appeals in which the appellant, The School Board of Palm Beach County, claims that excessive verdicts were rendered on insufficient evidence in favor of the appellees, Cynthia Taylor, Kathea Clarke and Patricia O'Hara and their parents. The three girls were injured in an outburst of student violence while they were attending Boca Raton High School on February 5, 1973. All three were assaulted by fellow students after their first period classes let out at 8:00 a.m.
Ms. Taylor was standing in front of her locker when a gang of youths approached and one of them "slapped" her on the face. Cynthia, not immediately aware that she was injured, ran into a nearby classroom where she was told she was bleeding. She subsequently went to a hospital where some 27 stitches were required to close an apparent *1046 razor cut on the right side of her face. She has a permanent scar which is readily visible and which, in the opinion of her physician, would remain visible even if recommended cosmetic surgery is done. She testified that she continues to be embarrassed by the scar but has no other effects from the injury, and her physician described her as a well-adjusted young woman who had recovered from the effects of the injury except for the permanent scar. Cynthia's past medical expenses totaled $269.50 and future medical expenses were estimated to be between $450.00-$650.00. She was a college student at the time of trial.
Ms. Clarke did not appear at trial, and her testimony was received by deposition. She stated that as she was walking down a hallway, she was approached from behind by a gang of youths who were pushing other students out of their way. When they reached her they knocked her down and when she got back up one of the gang walked by and struck her in the neck. She, too, did not realize that she was cut until another student called it to her attention. A razor wound to the back of her neck required 15 stitches, and she was left with a permanent scar at the top of her neck which was usually covered by her hair. She saw a doctor who stitched the wound and later removed the stitches, and her total medical expenses were $95.50. She reported no other effects from the injury other than an aversion to horror movies. No physician testified about her injuries. She was a college student at the time of trial.
Ms. O'Hara was sitting on a bench underneath a stairwell when she was attached by a gang of youths. She was pushed to the floor, stabbed, kicked and knocked unconscious. A counselor took her into a classroom and applied first aid to a laceration on the top of Patricia's head. Six stitches were required to close the head wound. After the wound healed the scar was covered by her hair. For a year after the accident she had frequent headaches and was referred to a neurologist who administered a brain wave test and took x-rays. These tests produced normal results although Ms. O'Hara was advised she had sustained a slight concussion. No physician testified as to her injuries, and her total medical expenses were $258.50. She was married and working at the time of trial.
Verdicts were returned in favor of Cynthia Taylor in the amount of $26,000.00 and for Kathea Clarke and Patricia O'Hara in the amount of $25,000.00 for each.
By the first two points on appeal the School Board challenges the sufficiency of the evidence and the trial court's denial of the Board's motion for directed verdict on the issue of liability. We have examined the record and reviewed the evidence and find no error in the trial court's denial of the motions for directed verdict. There is adequate evidence in the record to support a finding against the Board. Next, the Board asserts that the verdicts were excessive and that the amounts thereof were not supported by the evidence.
Recently the Supreme Court has attempted to set out an objective standard for review of damage awards. In the case of Bould v. Touchette, 349 So.2d 1181 (Fla. 1977) the court stated:
In determining whether a verdict is excessive, vague expressions by the courts about "conscience shocking amounts" do not furnish the enlightenment that the public should expect from judges about how they arrive at their decisions. The problem of determining whether a verdict is excessive is not so subjective as to prevent the formulation of standards to be used in the exercise of the court's power. Nor should judges have the unfettered latitude for decision that might be afforded by the imprecision of the rules that they themselves formulated.
Where recovery is sought for a personal tort, or where punitive damages are allowed, we cannot apply fixed rules to a given set of facts and say that a verdict is for more than would be allowable under a correct computation. In tort cases damages are to be measured by the jury's discretion. The court should never declare a verdict excessive merely because it is above the amount which the court *1047 itself considers the jury should have allowed. The verdict should not be disturbed unless it is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate. Lassiter v. International Union of Operating Engineers, 349 So.2d 622, opin. filed May 26, 1977, approving the reasoning in Gorsalitz v. Olin Mathieson Chemical Corp., 429 F.2d 1033 (5th Cir.1970). Id. at 1184.
While criticizing previous "vague expressions by the courts" as to standards of review, the bottom line of the Bould decision appears to be that a reviewing court must first determine what is "a reasonable range within which the jury may properly operate." Perhaps this is a more accurate reflection of the degree of discretion vested in a jury determining damages. However, this method still leaves it in the hands of the court to decide the minimum and maximum award in a particular case.
What is a reasonable range? That, of course, will vary depending on who answers the question. However, we do not believe that is a valid reason to avoid answering the question. In many other cases courts review the reasonableness of monetary awards based solely on the evidence presented. Reviewing courts constantly decide anew what constitutes reasonable amounts of awards in divorce cases. See McAllister v. McAllister, 345 So.2d 352 (Fla.4th DCA 1977). True, the standards in divorce cases are more fixed than those employed to evaluate personal injuries, but the principle of measuring the reasonableness of an award by the evidence is basically the same. The only alternative, which the courts have come very close to choosing, is to abandon the review entirely and simply leave the award of damages in personal injury cases "peculiarly within the discretion of the jury", and therefore untouchable. We decline to choose that alternative here.
In this case we feel that the jury awards for Clarke and O'Hara are excessive but that the Taylor award is within a reasonable range. Admittedly the verdict for Cynthia Taylor is substantial, but we do not feel it exceeds a reasonable range. The injury is substantial and permanent, and the award is clearly within a reasonable range when measured against a lengthy life expectancy. We cannot say the same for the other two awards. The evidence has already been reviewed. It is apparent in both the O'Hara and Clarke awards:
1. The consequences of the injuries were neither permanent nor substantial except for scars that were not readily visible.
2. The period of time during which the injuries affected the claimants was not substantial.
3. Medical treatment was limited and successfully completed without the need for future care.
4. Special expenses were limited to the medical bills of $95.50 for Clarke and $258.50 for O'Hara.
5. The similarity of the three awards reflects a lack of individual consideration of the damages in each case.
6. The factual circumstances as to the consequences of the injury present in Taylor's case are not present in the O'Hara and Clarke cases.
For these reasons we feel the maximum amount of damages which could properly have been awarded O'Hara and Clarke was $10,000.00 each. The evidence will not support a greater award.
There is an additional basis in the record of our conclusion. Counsel argued to the jury that the awards should set an example to prevent future incidents. It was stated that this was the main purpose that the suits were brought. This clearly smacks of a demand for a punitive award rather than compensatory damages. Food Fair Stores, Inc. v. Morgan, 338 So.2d 89 (Fla.2d DCA 1976). There was no claim for punitive damages in this case. Indeed there was no factual basis for such a claim against the School Board. And these were not claims against the actual assailants, against whom an award of punitive damages would be proper. No objection was made to this argument.
*1048 Were the awards not clearly outside what this court considers to be a maximum reasonable range of damages, we would not overturn these verdicts solely because of this improper argument. However, the existence of such argument clearly furnished an improper motive for the jury's award and our conclusion is that, as to the O'Hara and Clarke claims, the jury was influenced by this improper tactic and that influence is reflected in the amount of the awards.
Accordingly, the judgment for Cynthia Taylor is affirmed and the judgments in the O'Hara and Clarke cases are hereby reversed with directions that if the plaintiffs shall enter a remittitur of $15,000.00 each, then a judgment for $10,000.00 plus interest and costs may be entered against the defendant. If the plaintiffs fail to enter such remittitur within ten days after the filing of the mandate of this court, then the trial court shall order a new trial as to damages only.
CROSS, J., concurs.
DAUKSCH, J., dissents with opinion.
DAUKSCH, Judge, dissenting:
I respectfully dissent and decline to put myself in the shoes of the jury to determine the proper award. The verdict may or may not have been the result of improper argument  no objection was made to that argument so it must have been a tactical decision on the part of the defense attorney to accept the comment. We should decline to consider that "error" just as we did in Clay v. Thomas, 363 So.2d 588, (Fla.4th DCA Opinion filed October 25, 1978). It is difficult, if not almost impossible, for me to second-guess a jury verdict, which was reviewed by the trial judge, when essentially, only numbers are here for my review. Perhaps the verdicts the majority orders remitted are excessive when considered coldly against the verdict for the one not ordered remitted. However, it may be the verdict for Miss Taylor was low when compared to the others. None of the verdicts are so inordinate as to require appellate interference and I decline to interfere. To say that $10,000 is the upper limit of two of the verdicts sounds rather arbitrary to me. By what standards, objective or otherwise, can the majority say it determined $10,000 rather than $12,000 or $8,000 to be the upper limit? The jury system was meant to, and usually does, provide the service of fixing damages. I admit if the award was only for the medical expenses plus a little more I would not have much trouble deciding against the trial court if he refused a new trial. I admit also if the verdicts for the girls were $50,000 or $100,000 I should look closely for prejudicing influences and even consider doing what the majority is wont to do here. But, again, to take verdicts such as these from the trial jury and the trial judge seems to me to be using an appellate court's discretion in place of a jury's and a trial judge's. I should affirm. Delgado v. Strong, 360 So.2d 73 (Fla. 1978); Helman v. Seaboard Coast Line Railroad Company, 349 So.2d 1187 (Fla. 1977).