528 So.2d 1203 (1988)
JEEP CORPORATION, American Motors Corporation and Donald G. Robinson, Appellants,
v.
Elizabeth J. WALKER, Beamer Motor Company, a Florida Corporation, Daniel J. Luke, Jr., and Tammie Storie Luke, Appellees.
JEEP CORPORATION and American Motors Corporation, Appellants/Cross Appellees,
v.
Elizabeth J. WALKER, Appellee/Cross Appellant, and
Beamer Motor Company, a Florida Corporation, Donald G. Robinson, Daniel J. Luke, Jr., and Tammie Storie Luke, Appellees.
Nos. 4-86-1187, 4-86-1188.
District Court of Appeal of Florida, Fourth District.
April 13, 1988.
*1204 Joseph S. Kashi, of Conrad, Scherer & James, Fort Lauderdale, for appellants/cross appellees-Jeep and AMC.
Marjorie Gadarian Graham of Marjorie Gadarian Graham, P.A., West Palm Beach, for Donald G. Robinson.
Larry Klein and Jane Kreusler-Walsh of Klein & Beranek, P.A., and Lytal & Reiter, P.A., West Palm Beach, for appellee/cross appellant-Walker.
LETTS, Judge.
The plaintiff was rendered a quadriplegic when the CJ-5 Jeep, in which she was riding as a passenger, was involved in a collision with another automobile and rolled over. The jury verdict awarded 9.5 million dollars in compensatory damages to the plaintiff, labeling Jeep and American Motors Corporation 55% at fault and the driver of the other vehicle 45% in error. Additionally, the jury awarded 10 million dollars in punitive damages against Jeep. As to the latter award, the trial judge remitted it down to one dollar, but the plaintiff refused to accept this remittitur. Accordingly, a new trial was granted on the issue of punitive damages. We affirm in part and reverse in part.

MISCONDUCT
We first address the question of misconduct by the plaintiff's attorney. To be sure, misconduct was engaged in by both sides. On several occasions the transgressions were not objected to and some objections which were made were sustained. In the final analysis, the test for reversal hinges on whether the conduct was so inflammatory as to deny the defendants a fair trial. Seaboard Air Line Railroad v. Strickland, 88 So.2d 519 (Fla. 1956). Sub judice, the trial judge did not find the abuse to be "so extensive that its influence pervaded the trial gravely impairing a calm and dispassionate consideration of the evidence and the merits by the jury." Id. at 523. We are unable to conclude from our appellate level that the trial judge was in error. Inevitably, given the regrettable general decline in courtroom deportment nowadays, excess passions are aroused in a case like this when the stakes are so high. However, it is not for us to substitute our judgment for that of the trial judge, Shaw v. Shaw, 334 So.2d 13 (Fla. 1976), unless we are convinced that a fair trial did not result. The blameless plaintiff was a 29 year old woman tragically turned into a quadriplegic one week before she was due to be married. The marriage never took place. It is hard to imagine that the jury's sympathy could be any more aroused than it was by her pathetic presence in the courtroom, never mind the testimony presented.[1] A plaintiff has a right to be present at her own trial and there is competent substantial evidence in the record to support the *1205 verdict. We are unable to attribute the verdict to any misconduct by plaintiff's counsel.
We conclude this portion of the opinion by repeating what we said in Lemoine v. Cooney, 514 So.2d 391, 393 (Fla. 4th DCA 1987), which we find to be equally applicable in the case now before us:
[W]e briefly address the question of attorney misconduct. It is quite apparent from the record that there was misconduct on both sides. As might be expected, the cries of "foul" come now from those whose cause was lost in the trial court. Where each party's attorney engages in vituperation, it would be unfair to the litigant who won in the trial court to lose on appeal merely because his lawyer likewise participated in less than gentlemanly conduct. In so saying, we do not necessarily disagree with our sister court which has taken an adamant and admirable stand against unprofessional conduct during trial. See Borden, Inc. v. Young, 479 So.2d 850 (Fla. 3d DCA 1985). The misconduct in the instant case does not rise to the level, or perhaps more appropriately, does not sink to the depths, of that encountered in Borden and we do not believe that the plaintiff sub judice was deprived of a fair trial.

EXCESSIVENESS OF VERDICT
Next, we consider the question of whether the award of 9.5 million dollars in compensatory damages was excessive. The plaintiff presented evidence of special damages amounting to 4.6 million dollars. Accordingly, some 4.9 million dollars was awarded for pain and suffering. In Florida Medical Center, Inc. v. Von Stetina, 436 So.2d 1022 (Fla. 4th DCA 1983), we did not find 4 million dollars for pain and suffering to be excessive and we do not find 4.9 million dollars to be so in the case at bar.[2] We are, of course, aware that the Supreme Court reversed our Von Stetina opinion in Florida Patient's Compensation Fund v. Von Stetina, 474 So.2d 783 (Fla. 1985). However, it did not address the issue of damages for pain and suffering, except favorably by way of Justice Overton's special concurrence in which Justice Adkins joined. Moreover, the Supreme Court recently upheld a 10 million dollar jury verdict in Ashcroft v. Calder Race Course, Inc., 492 So.2d 1309 (Fla. 1986). In that case also, the plaintiff was rendered a quadriplegic. It is true that the amount of that verdict attributable to pain and suffering while discussed is not broken down. Nevertheless, it was a 10 million dollar recovery and the court reiterated its polestar position enunciated in the seminal case of Bould v. Touchette, 349 So.2d 1181, 1184 (Fla. 1977) as follows:
In tort cases damages are to be measured by the jury's discretion. The court should never declare a verdict excessive merely because it is above the amount which the court itself considers the jury should have allowed. The verdict should not be disturbed unless it is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate.
We are of the opinion that, taken the ghastly hell-on-earth calamity that has overtaken Elizabeth Walker (see footnote 1), the jury did not exceed its reasonable permissible range of operation.

PUNITIVE DAMAGES
Turning next to the question of punitive damages, we find error. In line with several Supreme Court decisions on the subject, we hold the evidence presented does not support an award of punitive damages and the defense should have been given a directed verdict on this issue. It would appear that the Florida Supreme Court has all but eliminated punitive damage awards in products liability cases. See Fisher v. Shenandoah General Construction Co., 498 So.2d 882 (Fla. 1986); American *1206 Cyanamid Co. v. Roy, 498 So.2d 859 (Fla. 1986); Wackenhut Corp. v. Canty, 359 So.2d 430 (Fla. 1978); Chrysler Corp. v. Wolmer, 499 So.2d 823 (Fla. 1986); Celotex Corp. v. Pickett, 490 So.2d 35 (Fla. 1986).
As was said in Crysler Corp. v. Wolmer, at 825:
Punitive damages are imposed in order to punish the defendant for extreme wrong-doing and to deter others from engaging in similar conduct. Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981). They are not intended as a means by which a plaintiff can recover extra damages. Thus, punitive damages are warranted only where the egregious wrongdoing of the defendant, although perhaps not covered by criminal law, nevertheless constitutes a public wrong. Arab Termite & Pest Control, Inc. v. Jenkins, 409 So.2d 1039 (Fla. 1982). Therefore, the question that must be answered utilizing the Carraway [v. Revell, 116 So.2d 16 (Fla. 1959)] standard is whether Chrysler exhibited a reckless disregard for human life equivalent to manslaughter by designing and marketing the Volare. [Emphasis added.]
This "reckless disregard for human life equivalent to manslaughter" is a phrase repeatedly employed by our Supreme Court and we most recently discussed it in the case of Hospital Corporation of Lake Worth v. Romaguera, 511 So.2d 559 (Fla. 4th DCA 1986). Basically, Jeep stands accused of continuing, without warning, to market a vehicle with a high propensity to roll over after it well knew of this most dangerous infirmity. It is not argued that Jeep was deliberately attempting to maim or kill Elizabeth Walker and we find nothing in the record to suppose that Jeep's conduct was any more reprehensible than that of many of the other manufacturers in the Supreme Court cases cited in this section of the opinion. Accordingly, and as a matter of law, the defendants were entitled to a directed verdict on this issue. We remand for the entry of a judgment in conformity with this conclusion.

CERTIFIED QUESTION
While we have confidence in what we do here, we would be remiss if we failed to acknowledge that this opinion has far reaching effects and is one of great public importance. Accordingly, we hereby certify the following question to our Supreme Court:
HAVE WE CORRECTLY CONCLUDED THAT, AS A MATTER OF LAW, THE ISSUE OF PUNITIVE DAMAGES SHOULD NOT HAVE GONE TO THE JURY?

CROSS APPEAL
One aspect of this case on cross appeal has merit. The trial court set off the compensatory award in the sum of $168,622 for future benefits. This was error because under the facts of this case only past benefits can be treated thus. See § 627.7372, Fla. Stat. (1985), and Winston Towers 100 Association v. DeCarlo, 481 So.2d 1261 (Fla. 3d DCA), cause dismissed, 488 So.2d 832 (Fla. 1986). We remand for the entry of a judgment in conformity herewith.
We find no reversible error in any of the other points on appeal or cross appeal.
AFFIRMED IN PART; REVERSED IN PART.
HERSEY, C.J., and GUNTHER, J., concur.
NOTES
[1] It is stated in the Plaintiff's brief as follows: Plaintiff is a permanent quadriplegic. She is normal mentally. She will never have bowel or bladder control. She has to be given suppositories, has uncontrolled bowel movements, and then has to be cleaned up. She has a permanent catheter and drainage bag which is with her at all times. This results in a permanent problem with urinary infections. Even though plaintiff lost sensation, she has in the past and will in the future continue to suffer pain, particularly in her shoulders. She has developed severe diabetes. She has developed facial hair to the extent that it must be regularly shaved off. In addition to having no control over her bowels or bladder, she also menstruates which creates further problems in keeping her clean. She has muscle spasms in her legs, causing them to clamp together which pinches the catheter tube, stops the flow of urine, and creates problems.
[2] See also City of Tamarac v. Garchar, 398 So.2d 889 (Fla. 4th DCA 1981), overruled on other grounds, 502 So.2d 1241 (Fla. 1987).