524 So.2d 452 (1988)
WESTCHESTER EXXON, Appellant,
v.
Marcelo VALDES and Maribel Valdes, His Wife, Appellees.
No. 87-840.
District Court of Appeal of Florida, Third District.
March 29, 1988.
Rehearing Denied May 25, 1988.
*453 Magill & Lewis, P.A., and R. Fred Lewis, Miami, for appellant.
Paul Morris, Coral Gables, Marc N. Linowitz, Miami, for appellees.
Before HUBBART, BASKIN and JORGENSON, JJ.
JORGENSON, Judge.
Westchester Exxon [Westchester] appeals from an adverse final judgment entered upon a jury verdict awarding Marcelo Valdes and his wife, Maribel,[1] $80,000 damages in their negligence action. We reverse because the record conclusively demonstrates that Westchester was entitled to a directed verdict as a matter of law.
Valdes and his wife had stopped at the self-service island in Westchester's station in order to check their automobile, which had been running hot. After filling his car with gas, Valdes inquired of Manuel Garcia, the lone attendant on duty, where he could obtain water for his radiator. Garcia told him that the only water faucet was located at the full-service island. Valdes got a bucket and walked over to the full-service island, where Jose Mejido was checking his own automobile and Garcia was servicing a third automobile. While Valdes, Mejido, and Garcia were at the full-service island, Mejido removed the cap on his radiator. Boiling water and steam escaped from the radiator striking Valdes, who suffered *454 second degree burns with consequential scarring and skin discoloration.
Valdes and his wife filed a negligence action against Westchester, the Exxon Corporation,[2] and Mejido.[3] The complaint against Westchester alleged that Westchester had breached its duty of care toward Valdes through its failures:
(1) to fully supply its self service island by not having water available to customers using [the] self service area;
(2) to provide an attendant to service vehicles pulling up to the full service area;
(3) to maintain a sign at the full service island, instructing customers there to wait inside their cars for service.
The cause proceeded to trial on the issues framed in Valdes's complaint.
The evidence at trial revealed that, over the past several years, Mejido had been a regular self-service customer at Westchester's gas station where he had always serviced his own car. On the day of the accident, Mejido had driven into the full-service island because he knew from prior experience that the only water faucet was located there. Garcia testified that he had no idea that Mejido was planning to open his radiator cap and that there had never been a problem with water escaping from Mejido's radiator on the many previous occasions he had visited the station. Valdes testified to the events leading up to his injury:
I proceeded to go to the faucet with the bucket. As I was approaching Mr. Mejido I excused him and asked him permission to get water; at which time he moved away from the faucet and proceeded to the front of his vehicle.
At this time I just put the bucket on the floor and I started filling it up. I saw Mr. Mejido had his car with his hood up, but it was  I didn't have no idea that Mr. Mejido was having a problem with the radiator, that the car was overheated or anything. There was no sign of anything. Nothing to alarm me that his car was, you know, was a hazard for me to be there. And then I proceeded 
* * * * * *
Then I proceeded and I was looking at the bucket and all of a sudden I hear an explosion, and it was just like I was on fire.
At the close of Valdes's case, Westchester moved for a directed verdict on the issue of liability based upon the lack of proof of Westchester's breach of any duty of care as well as deficiencies regarding proximate cause and foreseeability. The trial court denied the motion. At the close of all the evidence, Westchester renewed its motion for a directed verdict. The trial court reserved ruling and submitted the case to the jury which returned a verdict in favor of Valdes. Westchester filed motions for a new trial, for judgment in accordance with its motion for a directed verdict, and for a remittitur. The trial court denied the post-trial motions and entered final judgment for Valdes and his wife pursuant to the jury verdict.
We agree with Westchester that the trial court erred in denying its motion for a directed verdict. To maintain a negligence cause of action, a plaintiff must plead and prove three elements:
(1) The existence of a duty recognized by law requiring the defendant to conform to a certain standard of conduct for the protection of others including the plaintiff;
(2) A failure on the part of the defendant to perform that duty; and
(3) An injury or damage to the plaintiff proximately caused by such failure.
Tieder v. Little, 502 So.2d 923, 925 (Fla.3d DCA), rev. denied, 511 So.2d 298 (Fla. 1987); Stahl v. Metropolitan Dade County, 438 So.2d 14, 17 (Fla.3d DCA 1983). The record here fails to establish the first two elements, thus mandating a directed verdict for Westchester on the issue of liability.
*455 Whether a duty exists is a question of law for the court. Florida Power & Light Co. v. Lively, 465 So.2d 1270, 1273 (Fla.3d DCA) (en banc), rev. denied, 476 So.2d 674 (Fla. 1985). "If no reasonable duty was abrogated, as a matter of law, no negligence [can] be found." Id. (quoting Rice v. Florida Power & Light Co., 363 So.2d 834, 839 (Fla.3d DCA 1978), cert. denied, 373 So.2d 460 (Fla. 1979)). See, e.g., Johnson v. Rinker Materials, Inc., 520 So.2d 684 (Fla.3d DCA 1988) (summary judgment for defendant-landowner affirmed where no legal duty to decedent-trespasser was breached). Because Valdes was its business invitee, Westchester owed him the duty (1) to keep its property in reasonably safe condition and to protect the invitee from dangers of which it is or should be aware; and (2) to warn the invitee of concealed dangers which are or should be known to the owner or occupier and which are unknown to the invitee and cannot be discovered by him through the exercise of due care. Spaulding v. City of Melbourne, 473 So.2d 226, 227 (Fla. 5th DCA 1985); Pittman v. Volusia County, 380 So.2d 1192, 1193 (Fla. 5th DCA 1980). An owner or occupier of a place of business is not an insurer of his customers' safety; rather, he owes his customers only a duty to protect against those risks which are reasonably foreseeable. Hall v. Billy Jack's, Inc., 458 So.2d 760 (Fla. 1984); Stevens v. Jefferson, 436 So.2d 33 (Fla. 1983); Budet v. K-Mart Corp., 491 So.2d 1248 (Fla.2d DCA 1986). Measured against this standard, it is clear, as a matter of law, that Westchester breached no duty owed to Valdes. Where a jury could not reasonably differ as to the existence of a material fact or inference, a directed verdict should be granted. Torres v. Sell, 502 So.2d 521, 522 (Fla.3d DCA 1987); City of Hialeah v. Rehm, 455 So.2d 458, 460 (Fla.3d DCA 1984), rev. denied, 462 So.2d 1107 (Fla. 1985).
The omissions alleged in Valdes's complaint  the absence of a water faucet at the self-service island, the presence of only one attendant, and the lack of a sign directing full-service patrons to remain in their vehicles  do not amount to an unsafe condition or a concealed danger, nor are they required as a matter of law. § 526.141, Fla. Stat. (1983). Valdes has cited no authority for his contention that a gas station must furnish the three features alleged in the complaint. Even when a service station fails to comply with a statute governing the sale of gasoline in approved containers, the station is not liable for a plaintiff's injury where the sale of the gasoline is not the cause of the injury. See Roberts v. Shop & Go., Inc., 502 So.2d 915 (Fla.2d DCA 1986) (defendant-gasoline vendor's noncompliance with statute governing supervised dispensing of gasoline could not serve as basis for liability in deaths and injuries of victims whom gasoline buyer doused and set aflame), rev. denied, 513 So.2d 1063 (Fla. 1987). The instant case presents a more compelling scenario for absolving a service station of liability because Valdes did not allege that Westchester was in violation of any statutory requirements for the operation of a service station. Just as the Roberts court "found no authority to justify saddling gasoline vendors with a duty in each instance of sale to assess the mental stability or criminal propensity of the persons who purchase their products," id. at 917, we find no basis for requiring a service station to anticipate and to guard against every possible type of accident which might occur involving a patron's vehicle.
This case does not involve a situation where an employee possessed superior knowledge of a potential danger and failed to apprise patrons of the danger. See Budet (customer injured by oversized cart left in store aisle; store not entitled to summary judgment where employees had confessed that they knew that the cart had been left in aisle). Valdes's own testimony at trial, that he perceived no potential danger from Mejido's automobile at the time he approached the water faucet, belies his allegation that Garcia placed him in the "zone of danger" by directing him to the full-service island. Garcia's own position in the "zone of danger" at the crucial time further attests to the totally unexpected nature of the accident. There was no evidence *456 adduced at trial to suggest that Garcia, Westchester's employee, possessed any superior knowledge of the risk of danger emanating from Mejido's automobile. Indeed, the undisputed testimony established that there had never been a remotely similar incident with Mejido's vehicle or any other automobile at Westchester's station. Absent knowledge of the hazardous propensities of Mejido's automobile, Westchester could not be required to warn or protect Valdes from the danger. See Hall; Heps v. Burdine's, Inc., 69 So.2d 340 (Fla. 1954); Kolosky v. Winn Dixie Stores, Inc., 472 So.2d 891 (Fla. 4th DCA 1985), rev. denied, 482 So.2d 350 (Fla. 1986).
The instant record does not support a finding that the danger created by Mejido's automobile existed for a period sufficient to endow Westchester with constructive knowledge of the condition. Constructive knowledge will be imputed if "the condition is one which has existed for sufficient length of time that the owner should have known of it." Marlowe v. Food Fair Stores of Florida, Inc., 284 So.2d 490, 492 (Fla.3d DCA 1973), cert. denied, 291 So.2d 205 (Fla. 1974). See Kolosky (evidence that three unsupervised children were observed running through grocery store aisles over thirty-to-forty-five-minute period sufficient to support finding that store had constructive knowledge of dangerous condition); Winn Dixie Stores, Inc. v. Williams, 264 So.2d 862 (Fla.3d DCA 1972) (where sticky substance on which plaintiff slipped and fell had been on floor for fifteen to twenty minutes prior to fall, sufficient time existed for store to have constructive knowledge of condition). The uncontroverted trial testimony in this case established a maximum time frame of approximately three to five minutes from Mejido's releasing the hood of his automobile to his opening of the radiator cap. Valdes himself estimated that he had been present at Westchester's station for only five minutes before the accident. He further agreed that "it was just a couple of seconds" after he arrived at the full-service island that Mejido opened his radiator. Given the abbreviated interval, Westchester could not be credited with constructive knowledge of the impending accident or with an accompanying opportunity to avert it.
Finding error in the trial court's denial of Westchester's motion for a directed verdict, we need not address the alleged deficiencies regarding causation and foreseeability in Valdes's action. We, therefore, reverse the final judgment and remand with directions to enter judgment for Westchester.
Reversed and remanded with directions.
NOTES
[1] The incident giving rise to this action occurred in 1983 when Valdes was married to Maribel. Valdes and Maribel were subsequently divorced.
[2] A summary final judgment was entered in favor of the Exxon Corporation. No appeal was taken from the judgment.
[3] The final judgment was entered against Westchester and Jose Mejido, who is not a party to this appeal.