546 So.2d 427 (1989)
John OAKES and Winnie Oakes, Appellants,
v.
PITTSBURGH CORNING CORPORATION, the Celotex Corporation, Eagle-Picher Industries, Inc., Owens Corning Fiberglas Corporation, Owens-Illinois, Inc. and Keene Corporation, Appellees.
No. 88-341.
District Court of Appeal of Florida, Third District.
April 4, 1989.
*428 Baron & Budd and Brent M. Rosenthal, Dallas, Tex., Louis S. Robles, Miami, for appellants.
Shakleford, Farrior, Stallings & Evans and Raymond T. Elligett, Jr., Tampa, for appellees.
Before SCHWARTZ, C.J., HUBBART, J., and E. EARLE ZEHMER, Associate Judge.
SCHWARTZ, Chief Judge.
After a severely contested four day trial in a case arising out of John Oakes's prolonged exposure to asbestos products manufactured by the defendants-appellees, the jury returned verdicts of $2,500,000 for Mr. Oakes and $175,000 in his wife's derivative action. It also assessed his comparative negligence, presumably based on his cigarette smoking, at twenty per cent. Upon post-trial motions, the trial judge ordered a remittitur of $1,140,000 from Mr. Oakes's gross verdict. The plaintiffs declined to accept the remittitur and instead have taken this appeal from the alternative order requiring a new trial on damages alone. We find that the remittitur-new trial order constitutes an abuse of the trial court's discretion and reverse it for entry of judgment on the verdicts.
We have carefully reviewed the grounds asserted by the trial judge[1] for the relief granted the defendants and conclude that none are supportable by applicable principles *429 of law as considered in the light of the record:
1. The ultimate factor in the trial court's decision was its conclusion that the amount returned by the jury was excessive, that is, simply stated, too high for the injuries sustained by Mr. Oakes. The essential problem with this conclusion is that, under our system, it is ordinarily, indeed almost invariably, the jury which is entrusted with the function of determining how much is enough and how much is too little or too much for the damages that have been demonstrated and described in the courtroom. Testing, however, by the applicable abuse of discretion standard, see Rety v. Greene, 546 So.2d 410 (Fla. 3d DCA 1989), the trial judge's conclusion that a deviation from this rule was in order and that a new trial was required, we cannot agree with that ruling. As a factual matter, it is perfectly plain that the injuries and damages to the plaintiff's well-being, to his right to freedom from physical and mental pain, and to the enjoyment of the remainder of his life were utterly devastating.[2] In these circumstances, the jury's assessment of the money equivalent of these losses, together with the economic ones, while large on an absolute basis, was *430 well within the proper exercise of its role in the resolution of these disputes. Accordingly, we consider that the case falls within that class of decisions in which the trial judge is deemed to have improperly substituted his judgment for that of the triers of fact and insupportably assumed the role of a seventh juror in the assessment of damages. This, a trial judge will not be permitted to do. Wackenhut Corp. v. Canty, 359 So.2d 430 (Fla. 1978); Laskey v. Smith, 239 So.2d 13 (Fla. 1970); Hodge v. Jacksonville Terminal Co., 234 So.2d 645 (Fla. 1970), cert. denied, 400 U.S. 904, 91 S.Ct. 142, 27 L.Ed.2d 141 (1970); Deveaux v. McCrory Corp., 535 So.2d 349 (Fla. 3d DCA 1988); Case v. Bentley, 527 So.2d 939 (Fla. 2d DCA 1988); Evering v. Smithwick, 526 So.2d 185 (Fla. 3d DCA 1988). See generally Rety, 546 So.2d at 418.[3]
2. The trial court purported to base its order also on the jury finding that twenty per cent comparative negligence was too low. It is clear, however, that a remittitur order may not properly be utilized to adjust the percentage of contributory negligence to reach a result consistent with the trial judge's view of the case. Cooper Transp., Inc. v. Mincey, 459 So.2d 339 (Fla. 3d DCA 1984), pet. for review denied, 472 So.2d 1181 (Fla. 1985); St. Pierre v. Public Gas Co., 423 So.2d 949 (Fla. 3d DCA 1982). In addition and in any event, the twenty per cent jury figure was entirely consistent with the evidence so that there was no reasonable basis for the trial court's interference with the determination on this issue as well. See Wackenhut Corp. v. Canty, 359 So.2d at 430; Laskey v. Smith, 239 So.2d at 13; Hodge v. Jacksonville Terminal Co., 234 So.2d at 645.
3. Any disagreement as to the effect of Oakes's various diseases upon his ultimate condition and the causation of those constituent illnesses were, at most, the subject of differing medical opinion. Since it was solely for the jury to resolve these conflicts and consider the weight of the disputed testimony, the trial judge had no right to interfere. Fitzgerald v. Molle-Teeters, 520 So.2d 645, 648-49 (Fla. 2d DCA 1988) (trial court may not properly grant new trial in light of "substantial conflicting expert medical opinion concerning the cause of medical problems"), review denied, 529 So.2d 694 (Fla. 1988); Eley v. Moris, 478 So.2d 1100, 1103-04 (Fla. 3d DCA 1985) (improper for trial court to grant new trial where conflicting medical testimony as to permanency for jury to resolve); North Dade Golf, Inc. v. Clarke, 439 So.2d 296, 298 (Fla. 3d DCA 1983) (trial judge unauthorized to substitute his judgment for that of jury on disputed question of whether defendant's negligence was the cause of plaintiff's heart attack), pet. for review denied, 449 So.2d 264 (Fla. 1984); Perenic v. Castelli, 353 So.2d 1190, 1192 (Fla. 4th DCA 1977) (new trial order abuse of discretion where doctors' testimony conflicted as to permanent injury and damages), cert. denied, 359 So.2d 1211 (Fla. 1978).
4. Nor did, as the trial court indicated, Oakes's pathetic physical condition constitute a permissible basis for setting the verdict aside. It is true that a finding that the jury was improperly influenced by considerations outside the record permits and may mandate a new trial. See Cloud v. Fallis, 110 So.2d 669 (Fla. 1959), Miles v. Ware, 204 So.2d 524 (Fla. 3d DCA 1967), cert. denied, 210 So.2d 869 (Fla. 1968). But Oakes's appearance was pre-eminently within the record itself as a circumstance which the jury was not only entitled to, but probably required to consider. Florida Greyhound Lines, Inc. v. Jones, 60 So.2d 396 (Fla. 1952); Jeep Corp. v. Walker, 528 So.2d 1203 (Fla. 4th DCA 1988); Purvis v. Inter-County Tel. & Tel. Co., 203 So.2d 508 *431 (Fla. 2d DCA 1967), cert. denied, 210 So.2d 223 (Fla. 1968).
5. Finally, the lower court attributed $140,000 of the alleged excessiveness to the proposition that there was no evidence to support an award for future medical expenses which was requested in this amount by the plaintiffs' counsel and presumably awarded by the jury. This ruling was simply an error of law. See Rety, 546 So.2d at 420-421. The record contains ample medical testimony to support this particular element of damages.
For these reasons, we conclude that the order requiring a new trial is unjustified in all respects. Accordingly, it is reversed and the cause remanded with directions to enter judgment for the plaintiffs in accordance with the jury verdicts rendered below.
Reversed and remanded.
NOTES
[1] The order ultimately entered states as follows:

1. Defendants' Motion for Remittitur is granted. It is hereby ordered that the gross verdict for John Oakes returned in this cause January 22, 1988, is reduced by the total sum of ONE MILLION ONE HUNDRED FORTY THOUSAND ($1,140,000.00) DOLLARS. Following that reduction, the verdict for John Oakes will be further reduced by 20% (comparative negligence in accordance with the verdict) for a net verdict to John Oakes of $1,088,000.00. The grounds for the granting of this remittitur are contained in the Motion for Remittitur filed by the Defendants, the provisions of which are incorporated herein, the grounds stated by the court at the hearing on 2/4/88, and the following grounds:
a. The undersigned Circuit Court Judge, by designation and appointment of the Florida Supreme Court, presides over all asbestos personal injury lawsuits pending in Dade and Broward Counties and has presided over at least five complete asbestos injury jury trials in the past few years. Based on the experience of the undersigned in such cases, and based upon the reasons stated at the hearing on February 4, 1988, the verdict for John Oakes is excessive, is against the manifest weight of the evidence in this case and shocks the judicial conscience of this court.
b. The verdict is excessive, showing that the jury was influenced by sympathy, prejudice or matters outside of the record. Evidence at trial demonstrated that medical experts on both sides agreed that at least two serious and potentially fatal medical conditions suffered by John Oakes, namely emphysema and coronary artery disease, were not caused by exposure to asbestos and the supplemental oxygen being used by John Oakes at all times and indeed during trial while testifying, was necessitated by emphysema. The verdict for John Oakes was influenced by non-related medical conditions.
c. The jury was influenced improperly by evidence of future medical expense erroneously admitted into evidence during the testimony of Plaintiffs' expert, Charles F. Tate, Jr., M.D. Dr. Tate's testimony of the cost of future medical (roughly estimated at $140,000), served to wrongly influence the jury that all of Plaintiffs' medical problems were the result of exposure to asbestos, when in fact, as medical experts on both sides agreed, some serious life-threatening medical conditions were not caused by exposure to asbestos.
d. The verdict is excessive based upon the totality of the evidence taken in conjunction with the age of the Plaintiff at trial (65 years); the probable life expectancy (1 to 2 years) of John Oakes, and the medical problems caused by smoking.
e. The issue of medical causation was vigorously contested by the Defendants. Although it was disputed as to whether John Oakes suffered asbestosis or some other asbestos-related disease, there was undisputed medical testimony that certain conditions suffered by John Oakes were not the result of exposure to asbestos from products of the Defendants. The size of the verdict for John Oakes in this case indicates to the Court that the jury ignored this uncontroverted testimony and awarded damages far in excess of compensation for even Plaintiff's full medical condition, even if all of it had been related.
2. Should Plaintiff, JOHN OAKES, elect not to accept the Remittitur provided for in this Order, then for the grounds stated herein, and for the grounds stated at the hearing on February 4, 1988, a new trial is hereby ordered.
[2] We consider that the following statement of his injuries in the appellants' brief is thoroughly sustained by a fair view of the record below:

John Oakes, a sixty-five year old man at the time of trial has progressive pulmonary asbestosis, as well as other diseases caused or aggravated by his occupational exposure to asbestos. As a result of his asbestosis, Mr. Oakes is continually short of breath, even at rest. Minimal exertion, such as walking across the living room or climbing onto a doctor's examining table, makes him even more short of breath, requiring the administration of supplemental oxygen. For the twenty months preceding the trial, he has kept a portable breathing machine at his home, which he uses at least every three to four hours and which supplies him with the supplemental oxygen that he needs to keep himself alive. He will require supplemental oxygen for the rest of his life. He often suffers from coughing spells that are so severe that they cause him to faint. His violent coughing alone does not liberate the mucus that is clogging his lungs, and bystanders must pound on his chest to allow him to breathe. He has suffered at least three broken ribs from this pounding on his chest; these fractures were visible on x-rays of his chest taken by the Defendants' expert medical witness.
Since the development of his asbestosis, Mr. Oakes has been diagnosed with coronary artery disease and congestive heart failure. Both of these cardiac complications are attributable, at last in part, to the pulmonary problems caused by his asbestosis. Moreover, Mr. Oakes cannot have surgery to alleviate these conditions, because his asbestos-related pulmonary disease precludes the use of anesthesia. Both his pulmonary disease and his heart disease are thus incurable and terminal.
The breathing problems caused by his asbestos exposure have had a devastating effect on the life-style of Mr. Oakes. Although he loved his work and intended to work indefinitely, at least to age seventy (his father had worked until age eighty), Mr. Oakes was forced to retire at age sixty-two and a half because of his asbestosis. Prior to the development of his pulmonary problems, Mr. Oakes was healthy and athletic for a man of his age; he enjoyed playing tennis, skating, vacationing with his family, serving as song director for his church, and attending ball games. After becoming sick with asbestosis, however, his only activities are watching television and talking with his wife. He can no longer attend ball games because he is unable to take his breathing machine to the games. He is no longer able to sing in the church choir because he doesn't have enough breath to sing. He can no longer mow his own lawn, do maintenance work around the house, or drive to his doctor's office. He is unable to play with his grandchildren, and has no physical relationship with his wife. He must take thirty pills every day, and cannot sleep more than two to three hours at a time because of his breathing problems. He must use both hands to write, and oftentimes cannot feed himself. He cannot eat in public. Although he is capable of washing his face, he cannot take a shower himself and must be bathed by his wife. He cannot shave, even with an electric razor. He cannot dress himself. In the past two years, Mr. Oakes has required hospitalization for his asbestosis on numerous occasions. As Plaintiffs' counsel stated during his closing argument, John Oakes is a pulmonary cripple.
[3] In reaching this conclusion we have considered and necessarily rejected those cases in which the trial court's conclusion of gross excessiveness is affirmed because reasonable persons could have agreed that the verdict was so excessive (or inadequate) to be against the manifest weight of the evidence with the result that no abuse of discretion was shown. E.g., Smith v. Brown, 525 So.2d 868 (Fla. 1988); Ford Motor Co. v. Kikis, 401 So.2d 1341 (Fla. 1981); Baptist Memorial Hosp., Inc. v. Bell, 384 So.2d 145 (Fla. 1980).