596 So.2d 700 (1992)
Randy Wayne KEENE, Appellant,
v.
CHICAGO BRIDGE AND IRON COMPANY, an Illinois corporation, Appellee.
No. 89-2542.
District Court of Appeal of Florida, First District.
February 18, 1992.
*701 Bruce J. Greenspan, Jacksonville, for appellant.
Bruce S. Bullock and Bert A. Rasmussen of Bullock and Childs, P.A., Jacksonville, for appellee.
ZEHMER, Judge.
Randy Wayne Keene, the plaintiff in this personal injury action against Chicago Bridge and Iron Company, appeals a final judgment pursuant to Chicago Bridge's motion for directed verdict that was granted after the jury returned a verdict for Keene. Alternatively, the trial court granted Chicago Bridge's motion for new trial on certain grounds should the directed verdict be reversed on appeal. Keene asserts that both rulings are error. Chicago Bridge cross-appeals the denial of its motion for new trial on the special ground of improper argument by Keene's counsel. We hold that the trial court erred in granting the motion for directed verdict because the record presented disputed issues of fact for resolution by the jury on each essential element of Keene's cause of action for negligence. We also hold that the trial court erred in granting a new trial because the record fails to support the grounds recited in the trial court's order. We find no merit in the cross-appeal because Chicago Bridge's counsel failed to make objections in the trial court sufficient to preserve this issue for appellate review.

I.
This appeal brings for review a judgment entered on a directed verdict for the defendant, Chicago Bridge, so it is necessary to view the facts shown by the evidence in the light most favorable to the plaintiff Keene. E.g., Teare v. Local Union No. 295, 98 So.2d 79 (Fla. 1957); Pritchett v. Jacksonville Auction, Inc., 449 So.2d 364 (Fla. 1st DCA 1984); Gray v. Break, 440 So.2d 1297 (Fla. 5th DCA 1983).
On October 1, 1985, Keene was working for a company named Ceilcote at the St. Johns River Coal Power Plant in Duval County. Ceilcote was a subcontractor engaged in applying a corrosion-proof coating on the interior of huge steel storage tanks. This was Keene's third day on the job, and his duties were primarily to take down, move and set up scaffolding for the workers to stand on inside the tanks. The fourman crew Keene was working with needed additional boards to complete the scaffolding they were erecting, and the only boards available were stacked outside the tank. The stack contained boards of varying lengths, from six to fourteen feet, and measured approximately four feet wide and four feet high. The boards were not neatly stacked and were somewhat unstable. A sandblasting machine, sometimes referred to as a sand pot, was sitting on top of the stack of scaffolding boards.
Keene had never worked around sandblasting before and was not familiar with sandblasting equipment. The sand pot here involved had handles, two large *702 wheels, and a stabilizer bar that kept it upright when stationary. It appeared to Keene and his labor foreman, Fred Johnson, to weigh about two to three hundred pounds, so they decided it could be moved off the stack of boards by hand. Unknown to them, the sand pot was full of sand and weighed about 1000 pounds, considerably more than their estimate. When they attempted to move the sand pot, with Keene holding on to the handle and Johnson grasping the stabilizer bar and tilting the machine towards Keene, it began to fall uncontrollably off the stack of boards. Keene lost his footing and was unable to remove his left hand from the handle before the sand pot crushed it, amputating portions of three fingers.
The sandblasting machine was owned by Chicago Bridge, another subcontractor on the power plant project, and used by its employees for sandblasting the storage tanks before painting. Chicago Bridge also had a mobile crane, commonly known as a cherrypicker, which was kept nearby and had been used by its employees to hoist the sand pot atop the stack of Ceilcote's scaffolding. There was some dispute in the evidence as to whether this crane could reach the sand pot when Keene attempted to move it in view of the presence of debris around the stack of scaffolding boards. The sand pot apparently had been in place on the stack for several days. The day before this accident, a laborer employed by Chicago Bridge had told one of its painting foremen that he needed to get the sandblaster off the stack of boards because it was not safe, and could fall and hurt someone. The foreman replied that the pot would be all right where it was.
Keene filed this action for damages against Chicago Bridge, alleging negligence in its permitting the sand pot to be and remain on the stack of Ceilcote's scaffolding boards because it created a dangerous condition that Chicago Bridge knew or should have known would foreseeably cause an injury to a worker such as Keene needing to use these boards. At trial, the parties adduced evidence on the various issues of fact. Among other things, the Chicago Bridge's painting foreman testified that it was possible for two strong men to move an empty sandblaster on ground level, but that he would not even attempt to do so when it was full of sand. Another laborer testified that he would not have attempted to move the sandblaster with a crane for fear of getting hurt. There was testimony by workers that one could determine whether the sand pot was full simply by raising the lid and looking in it, and also by the amount of difficulty encountered in moving it. One of Keene's witnesses was William J. King, Ph.D., who was found qualified by the court and permitted to testify as a human factors expert over Chicago Bridge's objection. This witness opined that a laborer not familiar with sandblasting equipment would not ordinarily appreciate the danger of moving such equipment under the circumstances described above.
The case was submitted to the jury, and it returned a verdict finding that Chicago Bridge was negligent and that such negligence caused Keene's injuries; that Keene was not negligent; and that Keene's damages amounted to $400,000. After the verdict was returned, Chicago Bridge moved to set aside the verdict and enter judgment in accordance with its motion for directed verdict pursuant to rule 1.480(b), Florida Rules of Civil Procedure. Subject to appellate review, Chicago Bridge also moved, in the alternative, for a new trial. Nine grounds were set forth in support of both motions. The trial court granted the motion for directed verdict notwithstanding the verdict, and alternatively, granted a new trial. After stating the facts essentially as set forth above, the trial court's final judgment recited:
In connection with obtaining some of the boards, the Plaintiff (Keene) and his foreman (Johnson) decided to roll the "sandblaster" off the boards. The foreman was going to "tilt it towards me. I was going to pull and he was going to push." (Trans. p. 22).
Plaintiff described the incident as follows (Trans. 25):
Q. Now, would you please describe for the jury how you were planning to *703 move the sandblasting machine off of the boards?
A. I got the upper part, handle part as you showed there, I got the upper part and he went around and got the stabilizer, that is what they call it, you know, the stabilizer part. He bent over and he put his hand on that part and said, "Are you ready." And I said, "yes." He tilted it over toward me, my feet went out from under me, and the sandblaster, hopper, was on my left hand.
* * * * * *
In his memorandum (page 3), Plaintiff states the negligence of defendant as follows:
"In Plaintiff's Second Amended Complaint, upon which the action was tried, it was alleged that Defendant owed Plaintiff a duty to "maintain its equipment in a reasonably safe condition" so as not to injure persons who would foreseeably come into contact therewith. It was further alleged that Defendant breached this duty by causing the "blast machine" to be placed atop scaffolding boards, thus constituting a danger of which Defendant was, or should have been, aware. It was also alleged that Defendant further breached its duty by failing to warn of the dangerousness of the equipment or of the appropriate method by which to move it."
The trial court's judgment then concluded:
After review and reconsideration, the Court finds that there is no evidence that defendant "failed to maintain its equipment in a reasonably safe condition," or that placing the sandblaster on the boards constituted a danger of which defendant should have been aware, and finds, as a matter of law, that defendant did not breach any duty to plaintiff by failing to warn of the dangerousness of the equipment or of the appropriate method by which to move it. Vermont Mutual Insurance Company et al. v. Conway, (D.C.A. 1) 358 So.2d 123; Westchester EXXON v. Valdes, (D.C.A. 3) 524 So.2d 452. Further, the evidence shows that the acts of the Plaintiff and his foreman were the legal cause of Plaintiff's injury. Melton v. Estes, et al. (D.C.A. 1) 379 So.2d 961.
Therefore, the motion of the plaintiff [sic] to set aside the verdict and enter judgment in accordance with the motion on ground 1 for directed verdict is granted.[1]
In the alternative and should the grant of directed verdict be reversed, Winn-Dixie Stores, Inc. v. Robinson, (Fla.S.C.) 472 So.2d 722, the Motion for New Trial is granted on grounds 2, 3 (Except as to "improper conduct of plaintiff's counsel") and 5. Smith v. Brown, (Fla.S.C.), 525 So.2d 868; Pullum v. Regency Contractors, Inc., (D.C.A. 1), 473 So.2d 824; Florida Power Corporation v. Barron, (D.C.A. 2), 481 So.2d 1309.[2]
In granting the motion for directed verdict, it was the view of the trial court that Keene failed to prove each element of the negligence charged in the complaint. In so ruling, the trial court erred because the record contains competent evidence in support of the jury's verdict for Keene. After reviewing this record, it cannot be said as a matter of law that Chicago Bridge owed no duty of care to Keene as an employee of *704 Ceilcote, that Chicago Bridge did not breach that duty, or that such breach did not proximately cause Keene's injuries. Likewise, it was error for the court to order a new trial on the grounds alleged in paragraphs 2, 3, and 5 of Chicago Bridge's motion. Not only does the order fail to set forth the reasons for granting a new trial on these grounds with the required specificity, the three grounds relied on by the trial court cannot be sustained on this record.
We now discuss these errors in greater detail.

II.
The legal principles governing directed verdicts are well established. In Pritchett v. Jacksonville Auction, Inc., 449 So.2d 364 (Fla. 1st DCA 1984), we reversed a directed verdict for the defendant in a negligence action, stating:
When considering the propriety of a motion for directed verdict, the evidence of course must be considered in the light most favorable to the non-moving party, and if there is any evidence to support a possible verdict for such party, a directed verdict is improper. Townsend v. Ward, 429 So.2d 404 (Fla. 1st DCA 1983); Guy v. Kight, 431 So.2d 653 (Fla. 5th DCA 1983). Moreover, a directed verdict in a negligence action should only be entered if the plaintiff could not recover under any reasonable view of the evidence. Whitten v. State Farm Fire and Casualty Company, 430 So.2d 528 (Fla. 4th DCA 1983). This rule is particularly important in cases where, as here, the doctrine of comparative negligence applies. See Reinhart v. Seaboard Coast Line Railroad, 422 So.2d 41 (Fla. 2d DCA 1982).
449 So.2d at 365. See also Hernandez v. Motrico, Inc., 370 So.2d 836 (Fla. 3d DCA 1979). The erroneous granting of a motion for directed verdict notwithstanding the jury's verdict implicates the constitutional right to trial by jury guaranteed in Article I, section 22, of the Florida Constitution (1968). Dudley v. Harrison, McCready & Co., 127 Fla. 687, 173 So. 820, 825-26 (1937); Hernandez v. Motrico, Inc., 370 So.2d 836.

A.
Whether a duty exists between the defendant and the plaintiff is a question of law for the court. Westchester Exxon v. Valdes, 524 So.2d 452 (Fla. 3d DCA 1988). Unquestionably, Chicago Bridge had a common law duty of care not to create or maintain a condition at the work site that could be unreasonably dangerous to other subcontractors' employees such as Keene working at the same site. See Jones v. Florida Power Corp., 72 So.2d 285 (Fla. 1954); Younger v. Giller Contracting Co., 143 Fla. 335, 196 So. 690 (1940); Padilla v. Gulf Power Co., 401 So.2d 1375 (Fla. 1st DCA 1981); Soucy v. Alexander, 172 Ga. App. 501, 323 S.E.2d 662 (1984); McGeary v. Reed, 105 Ohio App. 111, 151 N.E.2d 789 (1957); Rumsey v. Schollman Bros. Co., 156 Neb. 251, 55 N.W.2d 668 (1952); 57 C.J.S. Master and Servant § 610 (1948). Nor does ground one of the motion for directed verdict, on which the court's order was based, allege the absence of such legal duty. It takes only a little knowledge and understanding of construction work sites to appreciate, and the foregoing authorities clearly establish the legal rule, that when one subcontractor places its machinery or equipment on top of materials belonging to another subcontractor, the first subcontractor, in so doing, is under a duty of care not to create and maintain a condition or special risk that is unreasonably dangerous to the other subcontractor's employees who will be called on to use such materials in the course of their work. Likewise, the first subcontractor is under a duty to give adequate warning if the dangerous condition is not readily apparent to such workers. The duty to warn of this dangerous condition or special risk can be excused as a matter of law only if the workers' knowledge is conclusively shown by the evidence to be equal to or greater than that of the first subcontractor. A.O. Smith Harvestore Products, Inc. v. Suber Cattle Co., 416 So.2d 1176 (Fla. 1st DCA 1982); Horton v. Gulf Power Co., 401 So.2d 1384 (Fla. 1st DCA), rev. denied, 411 So.2d 382 (Fla. 1981). While *705 such knowledge is a valid defense to the alleged breach of duty to warn, however, it is not a defense to the charge of creating and maintaining a dangerous condition. See Kolosky v. Winn-Dixie Stores, Inc., 472 So.2d 891 (Fla. 4th DCA 1985), rev. denied, 482 So.2d 350 (Fla. 1986); Bennett v. Mattison, 382 So.2d 873 (Fla. 1st DCA 1980); Ferber v. Orange Blossom Center, Inc., 388 So.2d 1074 (Fla. 5th DCA 1980). Chicago Bridge had a legal duty of care as to Keene.

B.
The evidence established a jury issue as to whether Chicago Bridge breached its duty of care in this case, and whether such breach was the proximate cause of Keene's injuries. Whether placing and maintaining a loaded sand pot weighing 1000 pounds on top of a stack of scaffolding boards belonging to Ceilcote presented a condition or special risk that was unreasonably dangerous to Ceilcote's employees needing to move it in order to use the scaffolding boards, and whether Chicago Bridge's failure to give Ceilcote and its employees reasonable warning that the machine was loaded with sand and to give adequate cautionary instructions for its safe removal from atop the boards constituted a breach of Chicago Bridge's duty of care to Ceilcote's employee Keene were clearly questions for the jury. Under the evidence, the jury permissibly could find that Ceilcote's employees would have to remove the sand pot in order to obtain scaffolding boards and would attempt to do so in some manner, that an empty sand pot was not so heavy that it could not be moved by two strong men, that Keene and Johnson were unaware of the sand pot's loaded state when they attempted to move it, that in its loaded state the sand pot presented an exceptionally dangerous condition or special risk to Keene and Johnson should they attempt to move it, that Chicago Bridge knew or should have known of the danger to Ceilcote's employees should they attempt to move the sand pot by hand or without any assistance from Chicago Bridge, and that Chicago Bridge did not warn of the dangerous condition or special risk attributable to the load of sand concealed from view and did not provide any cautionary instructions to Ceilcote and its supervising employees concerning a method of safe removal of the sand pot from Ceilcote's boards. These factual issues involved material disputes in the evidence that remained to be resolved by the trier of fact.[3]
The trial court's ruling that Keene failed to prove Chicago Bridge breached any duty to warn is simply not supported by this record. That ruling was necessarily based on the trial court's conclusion that the uncontradicted evidence established that Keene's knowledge of the danger or special risk in moving the loaded sand pot was equal or superior to that of Chicago Bridge.[4] Yet the evidence in the record is in material dispute on this issue. There was evidence that one had to raise the lid and look inside of the sand pot to determine it was loaded, that Keene did not do so, and that he did not know the machine was so loaded and did not appreciate the danger in attempting to move the machine by hand.
Likewise, whether Chicago Bridge's breach of its duty of care to Keene was the proximate cause of Keene's injuries was an issue of fact for the jury to decide. The jury permissibly could find it was reasonably foreseeable that a Ceilcote employee would undertake to move Chicago Bridge's sand pot from the scaffolding boards and was in danger of being injured in doing so without the assistance of Chicago Bridge employees or special equipment such as the *706 cherrypicker used by Chicago Bridge to lift the sand pot on top of Ceilcote's scaffolding boards in the first place. Whether the risk of injury from negligent conduct is reasonably foreseeable and proximately caused by such negligent conduct is ordinarily a question for the jury. Gibson v. Avis Rent-A-Car System, Inc., 386 So.2d 520 (Fla. 1980); Stewart v. Boho, Inc., 493 So.2d 95 (Fla. 4th DCA 1986); Self v. B & F Crane Service, Inc., 439 So.2d 930 (Fla. 3d DCA 1983), rev. denied, 450 So.2d 485 (Fla. 1984); Crislip v. Holland, 401 So.2d 1115 (Fla. 4th DCA), rev. denied, 411 So.2d 380 (Fla. 1981). The record in this case contains competent evidence to prove that it was foreseeable that placing a loaded sand pot on top of another subcontractor's material was dangerous and could result in injury to that subcontractor's employees.
The trial court's ruling, however, was based on the conclusion that "the acts of the Plaintiff and his foreman were the legal cause of Plaintiff's injury." Since the evidence established Chicago Bridge's negligence and the requisite causation in fact, the trial court necessarily ruled as a matter of law that the conduct of Keene and his foreman was an independent intervening cause which relieved Chicago Bridge of its responsibility for negligence.[5] The court erred in doing so.
The law applicable in determining whether an act is an independent intervening cause as a matter of law or whether the issue should be submitted to the jury was discussed in detail by the supreme court in Department of Transportation v. Anglin, 502 So.2d 896 (Fla. 1987), from which we quote at length:
The district court's analysis of what constitutes an independent, efficient, intervening cause correctly concludes that for the original negligent actor to be relieved of liability, the intervening cause must be "truly independent of and not `set in motion' by the original negligence." 472 So.2d 784 at 787. According to the district court, if an intervening cause is reasonably foreseeable the original negligent defendant may still be held liable; whether an intervening cause is foreseeable is a question for the trier of fact. Id. at 788. The district court relied on our decision in Gibson [v. Avis Rent-a-Car System, Inc.] for these principles and evidently the court viewed the defendants' negligently allowing a puddle of water to stand in the road as an act which "set in motion" a chain of events which culminated in the Anglins' injuries. We disagree with this conclusion. While it is undisputed that petitioners' negligence was a factual cause of the Anglins' predicament (i.e., "but for" the puddle of water, the Anglins' vehicle would not have stalled), petitioners' negligence simply provided the occasion for the negligence of another. [Citations omitted.]
The district court has read our decision in Gibson too broadly and has applied it to a materially different factual situation. In Gibson we recognized that a negligent party is not liable for another's injuries when a separate force or action is the active and efficient intervening cause, the sole proximate cause or an independent cause. 386 So.2d at 522. However, we distinguished this principle from situations where the original negligent conduct "sets in motion" the chain of events which culminates in injury to the plaintiff. Id. It was in this context that we stated: "If an intervening cause is foreseeable the original negligent actor may still be held liable. The question of whether an intervening cause is foreseeable is for the trier of fact." Id. The negligent conduct at issue in Gibson did set in motion a chain of events which resulted in the plaintiff's injuries. The defendant, Arata, while intoxicated, stopped his car in one of the inner lanes of an interstate highway, causing a second car to stop behind him which in turn caused Gibson to stop behind the second car; once Gibson stopped, a fourth car driven by McNealy struck Gibson's car forcing it into the second car. The trial *707 court granted Arata's motion for directed verdict but denied McNealy's, ruling that McNealy's negligence was an efficient, intervening cause. Id. at 521. We held that this was error and found that in this context a jury question was presented because Arata's stopping his car in a lane of an interstate highway set in motion a chain of events which a reasonable person could have foreseen would create "a risk that other cars may collide as a result of trying to avoid hitting the stopped vehicle." Id. at 523. Gibson did not hold, as suggested by the district court's holding below, that all questions involving an intervening cause present a jury question.
* * * * * *
We recognized in Gibson that "the question of whether to absolve a negligent actor of liability is more a question of responsibility" than simply one of factual causation. 386 So.2d at 522.
* * * * * *
The policy of the law will of course not allow tort liability to attach to all conduct factually "caused" by a defendant:
Florida courts, in accord with courts throughout the country, have for good reason been most reluctant to attach tort liability for results which, although caused-in-fact by the defendant's negligent act or omission, seem to the judicial mind highly unusual, extraordinary, bizarre, or, stated differently, seem beyond the scope of any fair assessment of the danger created by the defendant's negligence. Plainly, the courts here have found no proximate cause in such cases based solely on fairness and policy considerations, rather than actual causation grounds.

Stahl v. Metropolitan Dade County, 438 So.2d 14 at 19 [(Fla. 3d DCA 1983)].
The district court below correctly characterized the actions of DuBose as an independent, intervening cause. 472 So.2d at 787. The error in the court's analysis of whether a jury question was presented lies in the court's failure to perceive that, even assuming that petitioners had created a dangerous situation, the actions of DuBose were so far beyond the realm of foreseeability that, as a matter of law and policy, the petitioners cannot be held liable for the respondents' injuries. While it may be arguable that petitioners, by creating a dangerous situation which caused the respondents to require assistance, could have reasonably foreseen that someone may attempt to provide such assistance, it was not reasonably foreseeable that DuBose would act in such a bizarre and reckless manner. Petitioners' negligent conduct did not set in motion a chain of events resulting in injuries to respondents; it simply provided the occasion for DuBose's gross negligence.
502 So.2d at 898-900.
Apart from the articulation that determining foreseeability in the context of an independent intervening cause as a matter of law is mainly a matter of policy to circumscribe liability for one's negligent conduct, the legal principles that may be drawn from the supreme court's opinion are that in setting such policy limits the courts are required to determine that the circumstances "seem to the judicial mind highly unusual, extraordinary, bizarre, or, stated differently, seem beyond the scope of any fair assessment of the danger created by the defendant's negligence," and that "`when reasonable people cannot differ, the issue [is] said to be one of law for the court.'" Id. at 899.
Applying the principles so distilled from Anglin to the case before us, we conclude that the acts of Keene and his foreman in attempting to move the sand pot off the pile of their employer's scaffolding boards cannot be appropriately characterized as highly unusual, extraordinary, bizarre or beyond the scope of any fair assessment of the danger created by Chicago Bridge's negligence. Just as Arata's acts in Gibson, i.e., stopping of his car in the inner lane of an interstate highway, "set in motion a chain of events which a reasonable person could have foreseen would create a risk that other cars may collide as a result of trying to avoid hitting the stopped vehicle" *708 (Anglin, 502 So.2d at 898-99), so too did Chicago Bridge's placing and maintaining a loaded sand pot on top of Ceilcote's scaffolding boards set in motion a chain of events which a reasonable person could have foreseen would create a dangerous risk that the sand pot may fall and injure a Ceilcote employee undertaking to move the sand pot in an effort to obtain the boards when needed. Keene and his foreman were compelled by Chicago Bridge's negligence to either move the dangerously placed sand pot or entirely forego using the boards. It was reasonably foreseeable that Ceilcote's employees would elect to move the machine rather than permit the job they were working on to come to a halt. Despite the fact that the manner in which they undertook to move the machine may, in hindsight, seem unreasonable to Chicago Bridge, their attempting to move the machine by hand simply cannot be characterized on the evidence in this record as so unusual or bizarre that such conduct could not have been reasonably foreseen. Even though the acts of Keene and his foreman moved the sand pot when it fell from the dangerous position on top of the stack onto Keene's hand, the evidence of Chicago Bridge's precedent negligence in placing and maintaining the machine on top of the stack of boards, thereby giving rise to its legal responsibility for the dangerous condition, required the denial of its motion for directed verdict. See Valdes v. Faby Enterprises, Inc., 483 So.2d 65 (Fla. 3d DCA), rev. denied, 491 So.2d 278 (Fla. 1986); Frison v. Winn-Dixie Stores, Inc., 407 So.2d 389 (Fla. 3d DCA 1981).
Keene presented competent evidence to prove each element of the negligence charged against Chicago Bridge, and was entitled to have the jury pass on the sufficiency of his case. It was reversible error to grant the motion for directed verdict notwithstanding the jury verdict for the plaintiff.

III.
The trial court likewise erred in granting the motion for new trial on this record. The trial court's order simply stated that "the motion for New Trial is granted on grounds 2, 3 (Except as to "improper conduct of plaintiff's counsel") and 5." (See note 2, supra.) Rule 1.530(f), Florida Rules of Civil Procedure, requires that "All orders granting a new trial shall specify the specific grounds therefor."[6] The principles governing appellate review of orders granting a new trial were aptly summarized in Gould v. National Bank of Florida, 421 So.2d 798 (Fla. 3d DCA 1982):
A trial court must give express reasons which will support its finding that the verdict is either against the manifest weight of the evidence or was influenced by consideration of matters outside the record... . The purpose of the requirement is to facilitate intelligent review of the order granting a new trial where the appellate court is called upon to determine whether a trial judge has abused his discretion... . Ordinarily the sound, broad discretion accorded trial judges in the granting of new trials should not be disturbed in the absence of a clear showing that it has been abused, ... but as is clear from all the cases, that discretion is subject to appellate scrutiny, ... [the] exercise of which must find support in the record... . In this case we have reviewed the record and find that it fails to affirmatively demonstrate an impropriety of the verdicts or that the jury was improperly influenced by considerations outside the record....
421 So.2d at 803 (citations omitted). See also Wackenhut Corp. v. Canty, 359 So.2d 430 (Fla. 1978); Oakes v. Pittsburg Corning Corp., 546 So.2d 427 (Fla. 3d DCA 1989).

A.
Ground two of the motion on which the new trial was granted simply states that *709 the verdict is against the manifest weight of the evidence. There is no discussion in the trial court order to explain the basis for this conclusion apart from the recitations related to granting the motion for directed verdict. Those recitations were based on the trial court's conclusion that the record contained no evidence to prove the negligence charge or that Chicago Bridge breached any duty to warn, and that the acts of Keene and his foreman were the sole legal cause of the accident. As discussed above, these recitations are not supported by the record. There is competent evidence in the record to establish each essential element of Keene's cause of action for negligence, and it was the jury's function to resolve the disputes in the evidence and the inferences to be drawn therefrom. Chicago Bridge's argument simply relies on the grounds so recited in the trial court's final judgment and does not point to anything else in the record that would support the motion for new trial, nor have we found anything in our review. We conclude, therefore, that it was an abuse of discretion for the trial court to grant a new trial on this ground. To uphold the order on this ground would permit a trial judge to override a jury verdict supported by competent evidence simply because of disagreement with the jury's assessment. In effect, the trial judge in this case has substituted his judgment for that of the jury, a practice that cannot be permitted. Oakes v. Pittsburg Corning Corp., 546 So.2d 427. See also Ashcroft v. Calder Race Course, Inc., 492 So.2d 1309 (Fla. 1986); Cirou v. Basler, 432 So.2d 628 (Fla. 3d DCA 1983); Lopez v. Cohen, 406 So.2d 1253 (Fla. 4th DCA 1981).

B.
The third ground of the motion adopted in the order granting a new trial simply recites that "the jury was influenced by prejudice, sympathy, ... or some other improper cause." This is wholly insufficient to comply with the requirement of the rule that such grounds be stated with specificity. Nevertheless, we have reviewed the record and find no support whatsoever for concluding that the jury was wrongfully influenced by improper matters. Nor does Chicago Bridge's argument further enlighten us as to any improper matters it had in mind when filing its motion. We reject this ground as not supported by the record.

C.
The fifth ground of the motion adopted by the order granting a new trial is based on alleged error in permitting Keene's human factors expert witness to testify to matters of opinion that a worker in Keene's situation would not have appreciated the danger of moving the sandblaster machine under the circumstances. First of all, we note a substantial discrepancy between the wording of the motion, i.e., that this expert gave "opinions as to the cause of the accident," because that is not the substance of this expert's testimony. Chicago Bridge also argues that such expert opinion testimony should not be permitted unless it is beyond the common understanding of the average layman and will probably aid the jury in its search for the truth, citing Buchman v. Seaboard Coastline R.R. Co., 381 So.2d 229, 230 (Fla. 1980), and Mills v. Redwing Carriers, Inc., 127 So.2d 453 (Fla. 2d DCA 1961), and that the testimony of this witness did not satisfy either test. Keene, on the other hand, argues that human factors expert testimony has been recognized as admissible in this state, citing Welfare v. Seaboard Coast Line R.R. Co., 373 So.2d 886 (Fla. 1979); Public Health Foundation for Cancer and Blood Pressure Research, Inc. v. Cole, 352 So.2d 877 (Fla. 4th DCA 1977), and Seaboard Coast Line R.R. Co. v. Hill, 250 So.2d 311 (Fla. 4th DCA 1971), cert. denied, 270 So.2d 359 (Fla. 1972), and that the testimony of this witness was admissible to aid the jury in its understanding of the factual issues.
We agree with Keene that this testimony was admissible in keeping with the rationale of the cases cited by him, and thus reject this ground of the motion for new trial as not supported by the record and applicable law. Since the trial court did not abuse its discretion when originally admitting *710 this evidence during trial, the mere change of mind after the jury rendered its verdict is not a legally sufficient ground for granting a new trial. Even if the admission of this testimony had been error, the error was harmless.
As each of the grounds of the motion for new trial is insufficient for the reasons stated, the order granting a new trial is reversed.

IV.
On cross-appeal, Chicago Bridge contends that the trial court erred in denying its motion for new trial on the ground that Keene's counsel made improper closing argument. No useful purpose will be served by reciting all of the comments now said to be improper, as we reject this argument for procedural reasons. Chicago Bridge made only one objection during the course of the argument by Keene's counsel, and on that occasion the trial court sustained the objection and gave the jury a curative instruction. The remaining comments now argued on appeal were not objected to during trial. None of these comments was so egregious as to rise to the level of fundamental error. In the absence of appropriate objection in the trial court, such comments could not serve as the basis for a new trial. Bishop v. Watson, 367 So.2d 1073 (Fla. 3d DCA 1979). We conclude that the cross-appellant has failed to adequately preserve these issues for appellate review. Kinya v. Lifter, Inc., 489 So.2d 92 (Fla. 3d DCA), rev. denied, 496 So.2d 142 (Fla. 1986); Wasden v. Seaboard Coast Line R.R. Co., 474 So.2d 825 (Fla. 2d DCA 1985), rev. denied, 484 So.2d 9 (Fla. 1986). The trial court did not err in rejecting this ground of the motion for new trial.
The judgment for Chicago Bridge based on the motion for directed verdict is reversed; the order granting a new trial is also reversed; and the cause is remanded with directions to enter judgment for Keene in accordance with the jury verdict.
REVERSED AND REMANDED.
SMITH, J., concurs.
BOOTH, J., dissents.
NOTES
[1] Ground one of the motion recited in its entirety:

1. Defendant was entitled to a Directed Verdict at the close of all the evidence because of the failure of Plaintiff to adduce competent evidence in support of each element of his claim, under the issues as established by the Pre-Trial Stipulation.
[2] The three grounds of the motion referred to alleged:

2. The verdict returned is contrary to the manifest weight of the evidence and contrary to the evidence in the case.
3. The verdict returned shows that the jury was influenced by prejudice, sympathy, improper conduct of Plaintiff's counsel, or some other improper cause.
* * *
5. The Court erred in permitting an unqualified "human factors" "engineering-psychology" "expert," with no engineering training of experience, to offer opinions as to the cause of the accident, including the Plaintiff's "perception of danger," when the fact situation in suit did not call for expert opinion, and the opinions sought and given invaded the province of the jury.
[3] For example, Chicago Bridge presented no competent evidence, through cross-examination of Keene's witnesses or in its own case, to establish that the sand pot was safe and stable where it sat atop the stack of scaffolding boards; rather, Chicago Bridge's initial contention was that the sand pot was not sitting on scaffolding boards at all, but was on a concrete pad or slab.
[4] The trial court's citation to Vermont Mutual Ins. Co. v. Conway, 358 So.2d 123 (Fla. 1st DCA 1978), and Westchester Exxon v. Valdes, 524 So.2d 452 (Fla. 3d DCA 1988), necessarily leads to this implication.
[5] The trial court cited Melton v. Estes, 379 So.2d 961 (Fla. 1st DCA 1979), for this principle, but this case is materially distinguishable from the facts in the case now before us.
[6] The rule also specifies that, "If such an order is appealed and does not state the specific grounds, the appellate court shall relinquish its jurisdiction to the trial court for entry of an order specifying the grounds for granting the new trial." Because we have proceeded to review the record to determine the sufficiency of the three grounds of the motion cited by the trial court, we find it unnecessary to relinquish jurisdiction in this case.